# In re ADAM.

[Cite as *In re Adam* (1997), 120 Ohio App.3d 364.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 96–L–138.

Decided June 30, 1997.

*Charles E. Coulson,* Lake County Prosecuting Attorney, and *Taylir K. Linden,* Assistant Prosecuting Attorney, for appellee.

*R. Paul LaPlante,* Lake County Public Defender, and *Joseph P. Szeman,* Assistant Public Defender, for appellant.

WILLIAM M. O'NEILL, Judge.

This is an accelerated calendar appeal submitted on the briefs of both parties.

Appellant, an alleged delinquent child, appeals from a judgment of the Juvenile Division of the Lake County Court of Common Pleas adjudicating him delinquent for possessing drug paraphernalia, a misdemeanor of the fourth degree if committed by an adult, in violation of R.C. 2925.14. For the reasons that follow, we affirm the judgment of the trial court.

The facts pertinent to this appeal are as follows. In June 1995, appellant was a student enrolled at Mentor High School. Appellant participated in vocational education classes at the school, which involved course work several miles away at Lakeland Community College. The rules of Mentor High School are applicable to students who attend classes at Lakeland.

The morning of June 1, 1995, Brian Lee Banks, an electronics instructor at Lakeland, was walking up to the second floor of one of the buildings on the Lakeland campus when he saw one of his students heading toward an exit. As the school prohibits a student from leaving a building without permission, Banks followed the student through the second floor exit door. At the landing of the stairwell, Banks observed two students, appellant and another individual, smok-

ing cigarettes. There is no dispute that the smoking of cigarettes on school property is a violation of Mentor High School's rules.

While talking with appellant and the other individual, Banks stated that he smelled something other than cigarette smoke. Based on encounters Banks had had with marijuana smoke, approximately five or six times previously, he thought the smell was of marijuana and asked if either of the two students had been smoking marijuana. Both students admitted they were smoking cigarettes, but denied marijuana use. Banks escorted the students to their classroom and told their teacher what had happened. Later that morning, Banks called his supervisor to explain what had happened and indicated that he would bring the students involved back to Mentor High School. The two students were not searched at the Lakeland campus.

After appellant returned to Mentor High School, he was called into the principal's office. The principal, Robert G. Haag, indicated that appellant was called into the office based upon Banks's report that he had caught appellant smoking cigarettes and that he believed he smelled marijuana. Despite the fact that Banks "didn't write [appellant] up for smoking marijuana," and Haag's admission that appellant would have been suspended from school on the basis Banks's observations of smoking tobacco without the need for further evidence, Haag proceeded to search appellant.

Haag had appellant turn the pockets of his clothing inside out. A search of the contents of appellant's pockets and wallet produced no evidence of any wrongdoing. Additionally, Haag acknowledged that appellant did not have an odor of any substance about his person. After the search of appellant, Haag went to appellant's locker and opened it. Haag proceeded to search all of the contents in the locker including appellant's books, coat, and book bag. In the course of searching the contents of appellant's locker, Haag opened the outside pockets of appellant's book bag and found a pipe. There is no evidence that appellant's book bag was in his possession at the time of the smoking offense or any place other than in his locker at Mentor High school while he was attending classes at Lakeland that morning. The pipe which was found inside the book bag contained a residue that was believed to be marijuana.

The principal justified the search of appellant's locker and its contents on two grounds. His initial authority was based upon the "reasonable suspicion" standard which permits school administrators to search a student or his belongings when they believe such a search will produce evidence of wrongdoing. This standard is found in R.C. 3313.20(B)(1)(a), which permits school officials to do the following:

"Search any pupil's locker and the contents of the locker that is searched if the principal *reasonably suspects* that the locker or its contents contains evidence of a pupil's violation of a criminal statute or of a school rule." (Emphasis added.)

Consistent with the statute, Haag stated that his search was based upon his "reasonable belief" that a locker search would reveal evidence of drug use. Were the search to have been authorized on those limited grounds, this matter would represent a straightforward review of that limited authority, based upon reasonable suspicion, which is authorized by the statute. In the instant matter, a student had been found smoking cigarettes on school property, and the teacher had a reasonable belief that he also smelled marijuana. Both acts of prohibited conduct, smoking cigarettes or marijuana, standing alone, would provide justification for the search which followed.

Both the school and the juvenile court, however, clearly indicated that the search was justified alternatively either on the "reasonable suspicion" standard found in R.C. 3313.20(B)(1)(a) or on the basis of the no-reason-at-all standard found in R.C. 3313.20(B)(1)(b), which grants school officials the broad authority to do the following:

"*Search any pupil's locker and the contents of any pupil's locker at any time if* the board of education posts in a conspicuous place in each school building that has lockers available for use by pupils a notice that the lockers are the property of the board of education and that the lockers and the contents of all the lockers are subject to random search at any time *without regard to whether there is a reasonable suspicion* that any locker or its contents contains evidence of a violation of a criminal statute or a school rule." (Emphasis added.)

With regard to this second source of authority to justify the search, the principal indicated that he was following a new policy adopted by the board of education, effective January 1995, which in his opinion allowed school officials to search any student's locker and the contents therein at any time for "any reason or no reason." The new policy, posted on all locker bays within the junior high and high school, states as follows:

"The lockers supplied by the Board of Education and used by the students are the property of the Board of Education. Therefore, the student lockers and the contents of all the student lockers are subject to random search at any time *without regard to whether there is a reasonable suspicion* that any locker or its contents contains evidence of a violation of a criminal statute or a school rule.

"Random searches of lockers may include a search with the assistance of dogs trained to detect the presence of drugs." (Emphasis added.)

Appellant admitted that the pipe found during Haag's search belonged to him, and appellant was suspended from school. Subsequently, a complaint was filed in

the Lake County Juvenile Court alleging that appellant was a delinquent child for the offense of possession of drug paraphernalia.

On October 26, 1995, appellant filed a motion to suppress evidence obtained in violation of his rights against unreasonable searches and seizures. The matter came before a magistrate of the court on January 9, 1996, who found the motion not well taken.

Objections to the magistrate's decision were heard by a judge of the juvenile court on March 29, 1996, at which time he took the matter under advisement. On May 31, 1996, the juvenile court issued its decision upholding the legality of the search. In open court the judge found the subject search to be "reasonable" based upon the circumstances of the case and the Supreme Court's pronouncements in *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720. In its judgment entry, however, the court clearly demonstrated that the search was justified by the school's "no reason" policy, and then went on to question the validity of both the statute and the school policy which implements the mandates of the statute.

In its judgment entry, the court stated, "It seems to the court that if the schools can go this far, then as counsel suggested, they could search the car, and even eventually, under some theory, possibly leave the school premises for events or activities, etc., and then there would be no telling where this would end." Although the juvenile court questioned the extensive search conducted by school officials in this case, the court ruled that the school had the authority for its search pursuant to the broad authority granted school officials by the legislature in R.C. 3313.20. Indeed, in ruling that both R.C. 3313.20(B)(1)(a) and (b) were controlling in the resolution of this case, the trial court *explicitly rejected* the standard pronounced by the United States Supreme Court in *New Jersey v. T.L.O.*, discussed above, for evaluating the propriety of school searches. Thus, the juvenile court overruled appellant's objections and denied appellant's motion to suppress. He subsequently entered a plea of no contest. Appellant was found to be a delinquent child and was fined $25.

From this judgment, appellant filed a timely notice of appeal and now argues, in his sole assignment of error, that the juvenile court erred by not granting his motion to suppress. Specifically, appellant argues that, pursuant to R.C. 3313.20(B)(1)(a), the search of his locker was not reasonable under the facts and circumstances of this case. Appellant further argues that R.C. 3313.20(B)(1)(b), authorizing school authorities to search a student's locker without a reasonable basis, violates his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and Section 14, Article I, of the Ohio Constitution. For the reasons that follow, this court finds that the search was reasonable, and the adjudication as a delinquent

child is affirmed. It is not necessary, therefore, for the court to rule on the constitutionality of the statute in this case. Due to the trial court's reliance on the "no reason" standard, however, this court feels compelled to address the very serious questions raised.

Ironically, both the school administrators and the juvenile court judge have reached the right decision for the wrong reason. It is clearly demonstrated by the record before this court that the search was reasonable. Once the juvenile violated the school's policy prohibiting smoking on school grounds, he voluntarily placed himself into the zone of inquiry. Upon evidence that a student was smoking on school grounds, either cigarettes or marijuana, it was reasonable for the school administration to search for evidence of that student's wrongdoing. In the present case, appellant's locker was certainly a logical place for school officials to conduct a search for contraband. We find that the search was authorized by R.C. 3313.20(B)(1)(a) and that as applied to the facts in this case the statute represents a constitutionally permissible limited exception to the prohibition against warrantless searches.

This record is equally clear, however, that both the school administrators and the juvenile court judge relied upon the blanket authority found in R.C. 3313.20(B)(1)(b) to justify the intrusion into the locker and book bag, which clearly were not involved in the prohibited conduct. Although the trial court reached the right result in this case, the court correctly indicated in its judgment entry that R.C. 3313.20(B)(1)(b) is at odds with the Supreme Court's ruling in *T.L.O.* Because both the school administration and the trial court relied on R.C. 3313.20(B)(1)(b) to justify the search of appellant's belongings, this court is compelled to review the constitutionality of R.C. 3313.20(B)(1)(b). To do otherwise would be to leave school administrators and trial courts with no guidance as to the legality of school searches conducted outside of the "reasonable suspicion" standard outlined in *T.L.O.*

The Fourth Amendment to the United States Constitution and Section 14, Article I, of the Ohio Constitution protect persons from unreasonable searches and seizures. "The basic purpose of this Amendment, as recognized in countless decisions of [the United States Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. San Francisco Mun. Court* (1967), 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930, 935. As a result, government officials, whenever feasible, must procure a warrant predicated on probable cause before conducting searches and seizures. See, *e.g.*, *Terry v. Ohio* (1968), 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905. However, the United States Supreme Court has upheld a number of searches that have been conducted without the prior procurement of a warrant. Some of the narrowly defined exceptions to the search warrant

requirement include searches incident to a lawful arrest, *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; automobile searches, *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; searches when evidence is in plain view, *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465, 91 S.Ct. 2022, 2037–2038, 29 L.Ed.2d 564, 582; searches where consent has been given, *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; inventory searches, *Illinois v. Lafayette* (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65; and searches where exigent circumstances exist such as "hot pursuit," *Warden v. Hayden* (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, or the imminent destruction of evidence, *Cupp v. Murphy* (1973), 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900.

In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720, the United States Supreme Court established the standard to be applied in the area of school searches. Stating that the warrant requirement was unsuited to the school setting, a majority of the court held that school officials could search a student if, under all the circumstances, the search was *reasonable*. *Id.* at 341, 105 S.Ct. at 742–743, 83 L.Ed.2d at 734–735.

In Ohio, the search of student lockers and the seizure of items therein has been codified in R.C. 3313.20(B), which provides the following:

"(1) The board of education of each city, local, exempted village, or joint vocational school district may adopt a written policy that authorizes principals of public schools within the district or their designees to do one or both of the following:

"(a) Search any pupil's locker and the contents of the locker that is searched if the principal *reasonably suspects* that the locker or its contents contains evidence of a pupil's violation of a criminal statute or of a school rule;

"(b) *Search any pupil's locker and the contents of any pupil's locker at any time if* the board of education posts in a conspicuous place in each school building that has lockers available for use by pupils a notice that the lockers are the property of the board of education and that the lockers and the contents of all the lockers are subject to random search at any time *without regard to whether there is a reasonable suspicion* that any locker or its contents contains evidence of a violation of a criminal statute or a school rule.

"(2) A board of education's adoption of or failure to adopt a written policy pursuant to division (B)(1) of this section does not prevent the principal of any school from searching at any time the locker of any pupil and the contents of any locker of any pupil in the school if an emergency situation exists or appears to exist that immediately threatens the health or safety of any person, or threatens to damage or destroy any property, under the control of the board of education

and if a search of lockers and the contents of the lockers is reasonably necessary to avert that threat or apparent threat." (Emphasis added.)

Appellant, within his two issues presented for review, does not challenge the constitutionality of R.C. 3313.20(B)(2) because, aside from the fact that it is not applicable to this case, the section allows schools to conduct searches when exigent circumstances exist. Likewise, appellant does not challenge the constitutionality of subsection (a) of R.C. 3313.20(B)(1) because the statute requires an analysis as to the reasonableness of a search consistent with *T.L.O.* However, appellant argues, in his first issue presented for review, that the search of his book bag was unreasonable based on the facts and circumstances of this case. As discussed previously, we uphold the search of appellant's book bag as having been predicated on a reasonable basis.

In his second issue presented for review, appellant argues that R.C. 3313.20(B)(1)(b), which formed the basis for the juvenile court's denial of his motion to suppress, is unconstitutional as it virtually eliminates the standard of reasonableness established by the United States Supreme Court in *T.L.O.* for conducting a search of a student's locker and the contents therein. As to this issue, the trial court reached the right result for the wrong reason.

Unlike the analysis utilized by the trial court in its judgment entry, the parties agree that the controlling case regarding the propriety of a school search is *T.L.O., supra,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720. As previously noted, the United States Supreme Court in *T.L.O.* held that a school administrator, a "governmental agent" within the purview of the Fourth Amendment, could conduct a search of a student's personal effects if the search was reasonable based on all of the circumstances.

In *T.L.O.,* a high school teacher discovered two students smoking in the lavatory in violation of a school rule. T.L.O. denied the incident and claimed that she never smoked. The school official demanded to see T.L.O.'s purse, in the possession of the student at the time of the rule violation, and found a pack of cigarettes as well as a package of rolling papers, a small amount of marijuana, a pipe, several empty plastic bags, a large quantity of $1 bills, and a list of names on an index card of students who apparently owed T.L.O. money. This evidence was turned over to the police, and T.L.O. confessed to the selling of marijuana at the school. T.L.O. was subsequently charged with delinquency and filed a motion to suppress the evidence found as a result of the school administrator's search.

The Supreme Court explicitly recognized that school children have legitimate expectations of privacy in possessions brought with them to school. "In short, schoolchildren may find it necessary to carry with them a variety of legitimate,

noncontraband items, and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds." *Id.* 469 U.S. at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. Additionally, the court acknowledged that the Fourteenth Amendment protects students from school officials who attempt to encroach on their rights:

" 'The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted. These have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, *if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes.' West Virginia State Bd. of Ed. v. Barnette* [ (1943), 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628, 1637]." (Emphasis added.) *Id.* 469 U.S. at 334, 105 S.Ct. at 738–739, 83 L.Ed.2d at 729–730.

However, the *T.L.O.* court also recognized that teachers and administrators have a substantial interest in maintaining discipline in the classroom, including the protection of students from the scourge of drugs and violent crimes that have afflicted our schools. "Even in schools that have been spared the most severe disciplinary problems, the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." *Id.* at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733.

It is within these two competing interests that the *T.L.O.* majority established the test of reasonableness, based on all the circumstances, in determining the validity of a search conducted by school officials. In determining the reasonableness of such a search, the court set forth a twofold inquiry: first, the action must be "justified at its inception"; and second, the search as actually conducted must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 341, 105 S.Ct. at 743, 83 L.Ed.2d at 734.

"[A] search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 341–342, 105 S.Ct. at 743, 83 L.Ed.2d at 734–735.

■ While *T.L.O.* left open the question of whether students have a legitimate expectation of privacy in the lockers provided to them by the state in which to store their belongings, *id.* at 337–338, 105 S.Ct. at 740–741, 83 L.Ed.2d at 732, fn. 5, a review of decisions from other jurisdictions reveals that our sister states have, in large measure, applied the reasonableness standard as set forth in *T.L.O.* to searches of a student's locker. See Berman, Student Fourth Amendment Rights: Defining the Scope of the T.L.O. School–Search Exception (1991), N.Y.U.L.Rev. 1077, 1103–1104, and citations accompanying fn. 140. A student does not lose his expectation of privacy in a coat or book bag merely because the student places these objects in his locker. *Commonwealth v. Cass* (1995), 446 Pa.Super. 66, 666 A.2d 313, 317.

■ Moreover, appellant was not stripped of his expectation of privacy in his book bag by any sign posted within the school's premises. As the court held in *United States v. Davis* (C.A.9, 1973), 482 F.2d 893, 905, "[t]he government could not avoid the restrictions of the Fourth Amendment by notifying the public that all telephone lines would be tapped, or that all homes would be searched." See *Jeffers v. Heavrin* (W.D.Ky.1988), 701 F.Supp. 1316, 1321 ("mere knowledge that one may be subject to search does not automatically render a person without any reasonable expectation of privacy.").

■ Applying *T.L.O.*'s twofold inquiry in determining the reasonableness of the search of appellant's book bag, it is apparent that the search of appellant was warranted at its inception. Appellant argues that any search, to be justified, must be conducted contemporaneously with the discovery of the prohibited conduct. Such an argument ignores the unique circumstances which surround the educational environment. It would be unreasonable to require a teacher to conduct an immediate investigation to confirm or dispel the teacher's belief that a violation of a rule has occurred. On the contrary, as in *T.L.O.*, the proper action for a teacher is to report the incident to the school administrators who are responsible for disciplinary violations. This is a reasonable course of action. Teachers are not required to abandon their teaching posts, disrupting the educational environment for other students, to conduct immediate investigations of any violation of school rules they might witness. Consequently, Banks's actions were justified and satisfy the first prong of the inquiry into the reasonableness of the search.

The second prong of the test for reasonableness is to determine whether the scope of the search was permissible. The search of the contents of appellant's pockets and wallet was clearly permissible as these areas were a plausible place

for him to conceal contraband during the smoking incident at Lakeland Community College. We further find that the subsequent search of the locker and its contents was reasonable based upon the facts of this case. It would be patently unreasonable to prohibit this school administration from conducting a search of this student's belongings when they were confronted with the *knowledge and admission* that he was smoking cigarettes and the *suspicion* that the aroma of marijuana was present as well. As stated earlier, appellant voluntarily placed himself into the school's zone of inquiry by smoking on school grounds during school hours. Appellant's first issue raised for review is without merit.

■ In the second issue presented for review, appellant argues that R.C. 3313.20(B)(1)(b) is unconstitutional. For the reasons that follow, the author of this opinion agrees. As previously noted, R.C. 3313.20(B)(1)(b) permits school officials to search any student's locker and the contents therein at any time without regard to the reasonableness test set forth in *T.L.O.* It is true that the statute provides students with notice that the lockers and the contents therein are subject to "random" searches. However, the broad grant of authority given to school officials in R.C. 3313.20(B)(1)(b) is not limited to random searches. The statute purports to authorize the search of any student's locker at any time for any reason whatsoever. Furthermore, while the policy enacted by the Mentor Public School Board of Education provides only for the "random" search of student lockers, the record in this case establishes that the selection of appellant's locker for a search was anything but "random." As the trial court validated the actions of the school administrators based on the broad authority granted the school under R.C. 3313.20(B)(1)(b), it is appropriate to rule on the constitutionality of this statute.

The United States Supreme Court has "consistently eschewed bright-line rules" when applying the standard of reasonableness to Fourth Amendment challenges such as that applied in *T.L.O. Ohio v. Robinette* (1996), 519 U.S. 33, ——, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354. The court has "expressly disavowed any 'litmus paper test' or single 'sentence or * * * paragraph * * * rule,' in recognition of the 'endless variations in the facts and circumstances' implicating the Fourth Amendment." *Id.* However, that is exactly what the Ohio legislature has done in establishing a rule that would allow school officials to search a student's locker and the contents therein without regard to the reasonableness standard set forth by the United States Supreme Court.

Indeed, one cannot envision any rule that minimizes the value of our Constitutional freedoms in the minds of our youth more dramatically than a statute proclaiming that juveniles have no right to privacy in their personal possessions.

The contents of a student's book bag in all likelihood represent the most personal of all student belongings. Included within this ever-present repository would be letters which are never meant to be sent, diaries which are not intended to be read by anyone, photographs of long lost friends or pets, and any other unmistakable evidence of the particularly unique stages of growing up. The government simply has no right to proclaim that, contrary to the right of privacy guaranteed by the United States Constitution, these personal articles will be subject to observation and dissemination by the adult community at will. It is hypocritical for a teacher to lecture on the grandeur of the United States Constitution in the morning and violate its basic tenets in the afternoon.

We do not mean to minimize the very serious drug- and alcohol-related problems facing our school systems, and this decision does not extend to other forms of searches. This opinion does not infringe the rights of administrators to conduct reasonable administrative locker searches, when the need may arise. These types of searches, and their scope, will no doubt face judicial scrutiny at a later date. However, the "blanket search" concept authorized by R.C. 3313.20(B)(1)(b) is unreasonable *per se* under the meaning of the Fourth Amendment and the United States Supreme Court's decision in *T.L.O.* Ultimately, we agree with the trial court's result in this case, but disagree with the path the trial court traveled to reach this correct result.

In conclusion, we hold that the search was reasonable and that the evidence found was properly utilized by the trial court. Appellant's adjudication as a delinquent child is affirmed. However, it appears that R.C. 3313.20(B)(1)(b), as it authorizes searches of students and their belongings on anything less than a reasonable basis, is contrary to the Ohio and United States Constitutions.

*Judgment affirmed.*

NADER, P.J., concurs separately in judgment only.

EDWARD J. MAHONEY, J., concurs in judgment only.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

NADER, Presiding Judge, concurring in judgment only.

Under the particular factual circumstances of this case, I agree that the principal of Mentor High School had reasonable grounds to suspect the existence of contraband in appellant's locker and book bag. Thus, the search of the bag was legal under the Fourth Amendment, as interpreted by the Supreme Court in *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 341–342, 105 S.Ct. 733, 742–743, 83

L.Ed.2d 720, 734–735, and under R.C. 3313.20(B)(1)(a), which merely codifies the *T.L.O.* court's holding. The juvenile court's decision to overrule appellant's motion to suppress the evidence obtained as a result of this search can be affirmed on this ground alone. Appellant's second assignment of error, which challenges the constitutionality of R.C. 3312.20(B)(1)(b), is moot and need not be addressed.

Moreover, it is a fundamental rule of constitutional law that " '[w]here a case can be determined upon any other theory than that of the constitutionality of a challenged statute, no consideration will be given to the constitutional question.' " *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 4–5, 598 N.E.2d 1149, 1152 quoting *Interstate Motor Freight Sys. v. Bowers* (1955), 164 Ohio St. 122, 57 O.O. 123, 128 N.E.2d 97, paragraph two of the syllabus. See *In re Miller* (1992), 63 Ohio St.3d 99, 110, 585 N.E.2d 396, 405 ("[T]his court will not reach constitutional issues [regarding a statute] unless absolutely necessary."); *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph two of the syllabus ("Constitutional questions will not be decided until the necessity for a decision arises on the record before the court."); *Bedford Hts. v. Tallarico* (1971), 25 Ohio St.2d 211, 212, 54 O.O.2d 321, 321, 267 N.E.2d 802, 803 ("It is well established that courts will refrain from declaring legislation unconstitutional unless the posture of a cause leaves no logical alternative thereto."). The rule ensures that courts will use the power of constitutional review sparingly, thereby preserving the autonomy of the legislative branch of government. In fact, it is reversible error for an appellate court to declare a statute unconstitutional where the case can be disposed of on other grounds. *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 125, 18 O.O.3d 354, 359–360, 413 N.E.2d 1187, 1194.

For these reasons, I must concur in judgment only and express no opinion as to the constitutionality of R.C. 3312.20(B)(1)(b).