**In the Matter of DENGG.**

[Cite as *In re Dengg* (1999), 132 Ohio App.3d 360.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 97–P–0113.

Decided March 8, 1999.

*Victor V. Vigluicci,* Portage County Prosecuting Attorney, and *Marrett W. Hanna,* Assistant Prosecuting Attorney, for appellant.

*William D. Lentz,* for appellee.

———————

FORD, Presiding Judge.

This is an appeal from the Portage County Court of Common Pleas, Juvenile Division. Appellant state of Ohio appeals from the trial court's judgment entry, in which the court granted appellee, John F. Dengg's motion to suppress.

The following findings of fact are derived largely from the "Magistrate's Decision and Order," filed on July 28, 1997. The magistrate found that on February 10, 1997, the Streetsboro City Schools granted permission to the Streetsboro Police Department ("SPD") to enter the Streetsboro High School ("SHS") in order to detect the presence of contraband substances in lockers at the school by using drug sniffing dogs. After the search inside the school was completed, the dogs and their handlers were dispatched to the school's parking lots. During the parking lot search, a dog from the Cuyahoga Falls Police Department "hit" on a vehicle owned by appellee's father. Officer Troy Beaver,

who is a police officer with the SPD, subsequently opened and searched the vehicle driven by appellee. The search revealed a drug pipe, containing marijuana residue, in the console of appellee's vehicle.

On February 28, 1997, Beaver filed a complaint in the Portage County Court of Common Pleas, Juvenile Division, charging appellee with possession of drug paraphernalia, in violation of R.C. 2925.14(A)(12), a misdemeanor of the fourth degree if committed by an adult. On April 16, 1997, appellee filed a motion to suppress the contraband seized by the officers as part of that drug search. On April 24, 1997, the magistrate conducted a hearing on appellee's motion to suppress. On July 28, 1997, the "Magistrate's Decision and Order" was filed. In that decision, the magistrate determined that the warrantless search of appellee's vehicle was not reasonable and that the evidence obtained from that search should be suppressed and inadmissible at the adjudicatory phase of this matter. On August 7, 1997, appellant filed objections to the magistrate's decision and order, arguing that the search of appellee's vehicle was reasonable and the evidence obtained from that search was admissible. On August 29, 1997, the trial court conducted a hearing on appellant's objections. On October 29, 1997, the trial court entered judgment, adopting the magistrate's determination that the evidence should be suppressed and precluded from being admitted into evidence during the adjudicatory phase of this matter. The trial court also stated that it was not provided with the transcript of the April 24, 1997 magistrate's hearing on appellee's motion to suppress. Therefore, the trial court expressly stated that it would not review or alter the findings of fact as determined by the magistrate.

On November 4, 1997, appellant timely filed a notice of appeal and now asserts the following assignment of error:

"The trial court erred, as a matter of law, to the prejudice of the state when it accepted the magistrate's decision and granted Dengg's motion to dismiss."

In the assignment of error, appellant contends that a warrant was not necessary in order to search appellee's vehicle because once the drug sniffing canine was "alerted" to his vehicle, the police officers had probable cause to perform a search under the "automobile exception."

At the outset, we note that although appellant has provided this court with a transcript of the magistrate's hearing on appellee's motion to suppress, we are precluded from considering any portion of that transcript since it was not provided to the trial court during earlier proceedings in this matter. Juv.R. 40(E)(3); *In re Pollis* (May 8, 1998), Trumbull App. No. 97–T–0066, unreported, at 3–4, 1998 WL 258406. Furthermore, although appellant claims that the trial court granted appellee's motion to dismiss, the trial court stated in its October 29, 1997 judgment entry only that the evidence should be suppressed at the

adjudicatory phase of this proceeding. Thus, appellant's assignment of error should be read to state that the trial court granted appellee's "motion to suppress," rather than "motion to dismiss."

Central to the issue before this court is the Fourth Amendment and its relationship to motor vehicle searches on school property. The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

In *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 341, 105 S.Ct. 733, 742–743, 83 L.Ed.2d 720, 734, the United States Supreme Court determined that the legality of a search on school property needs to be justified only by a standard of "reasonableness, under all the circumstances, of the search." In that case, a school teacher discovered a fourteen-year-old student smoking cigarettes in a school lavatory, in violation of a school rule. The teacher brought the student to the principal's office, where the assistant vice principal engaged the student with some questions. When the student stated that she had not been smoking, the assistant vice principal opened the student's purse and discovered a pack of cigarettes and cigarette rolling papers. The assistant vice principal then further searched the purse and found some marijuana, a pipe, several empty plastic bags, a substantial amount of money in one-dollar bills, two letters implicating her in drug dealing, and an index card containing names of students who owed her money. The court granted certiorari on the issue of whether the search consisted of a Fourth Amendment violation. The court held that because the search was reasonable, no Fourth Amendment violation had occurred. *Id.* at 347–348, 105 S.Ct. at 745–746, 83 L.Ed.2d at 738–739. In support of its decision, the court stated:

"It is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject. The warrant requirement, in particular, is unsuited to the school environment: requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools. Just as we have dispensed with the warrant requirement when 'the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search,' * * * we hold today that school officials need not obtain a warrant before searching a student who is under their authority.

"The school setting also requires some modification of the level of suspicion of illicit activity needed to justify a search. Ordinarily, a search—even one that may permissibly be carried out without a warrant—must be based upon 'probable

cause' to believe that a violation of the law has occurred. * * * However, 'probable cause' is not an irreducible requirement of a valid search. * * *

"We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause * * *. *Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.* Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the * * * action was justified at its inception,' * * *; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' * * *." (Emphasis added; footnote omitted.) *Id.* at 340–341, 105 S.Ct. at 742–743, 83 L.Ed.2d at 733–734.

This court has applied the constitutional standards established in *T.L.O.* to a school search case in which a teacher found the appellant, a student, smoking cigarettes in violation of school policy. *In re Adam* (1997), 120 Ohio App.3d 364, 697 N.E.2d 1100. The student was not immediately searched, but was searched, *without a warrant,* later in the morning by the school's principal. The teacher had reported to the principal that he believed he smelled marijuana when he discovered the appellant smoking cigarettes earlier that morning. The principal searched the appellant's pockets and wallet and found no evidence of wrongdoing. The principal then searched the appellant's locker and the book bag, books, and coat contained inside of it. While searching inside the appellant's book bag, the principal discovered a pipe containing marijuana residue. The appellant moved to suppress the pipe from evidence. This court held that the search was "reasonable" and, therefore, complied with R.C. 3313.20(B)(1)(a), which permits the principal of a school to search a locker or its contents if there is reasonable suspicion that the search will produce evidence of a school or criminal rule violation. *Id.* at 376, 697 N.E.2d at 1108.

The importance of *T.L.O.* and *In re Adam* to the decision currently before this court arises from the fact that those two cases articulate the principle that the public school is an environment where there is a reduced expectation of privacy, which furthers the permissibility of warrantless searches. While we recognize that the decision in *T.L.O.* was limited solely to school officials and their designees, we also realize that the court's reasoning may lend itself to someday encompassing law enforcement officers as well. However, this court expressly refuses to apply the "reasonableness" standard to justify a warrantless search performed by police until relevant precedent or legislative enactments direct us to hold otherwise.

In *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–2645, 77 L.Ed.2d 110, 120–121, the United States Supreme Court held that although an individual possesses a Fourth Amendment privacy interest in the contents of his or her personal luggage, a canine drug sniff of one's luggage at an airport does not constitute a "search" within the meaning of the Fourth Amendment. In that case, Drug Enforcement Agency ("DEA") agents subjected an individual's luggage to a "sniff test" by a drug detection dog at a public airport. The dog reacted "positively" to the luggage, which indicated the presence of drugs. The court held that the DEA's investigative technique did not violate an individual's Fourth Amendment rights. *Id.* at 707, 710, 103 S.Ct. at 2644–2645, 2646, 77 L.Ed.2d at 120–121, 122–123.

■ In addition, Ohio courts have held that the use of a drug sniffing dog to detect the presence of illicit drugs inside an automobile is not considered a "search" under the Fourth Amendment or the Ohio Constitution. *State v. Waldroup* (1995), 100 Ohio App.3d 508, 514, 654 N.E.2d 390, 394; *State v. Palicki* (1994), 97 Ohio App.3d 175, 181–182, 646 N.E.2d 494, 498–499; *State v. French* (1995), 104 Ohio App.3d 740, 749, 663 N.E.2d 367, 372–373; cf. *State v. Riley* (1993), 88 Ohio App.3d 468, 476, 624 N.E.2d 302, 307–308 (where a warrant was issued to search an impounded vehicle at the sheriff's department, after a canine indicated the presence of drugs). Moreover, a police officer "does not need a reasonable suspicion of drug-related activity in order to request that a drug dog be brought to the scene or to conduct a dog sniff of [a] vehicle." *State v. Carlson* (1995), 102 Ohio App.3d 585, 594, 657 N.E.2d 591, 597.

■ Additionally, police may conduct a warrantless search of an automobile under either of two distinct legal theories. First, pursuant to *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, police may search a vehicle incident to a lawful arrest. Second, under the rule of law established in *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572, the "automobile exception," police may conduct a warrantless search of an entire vehicle providing that the police officer has probable cause to believe that the evidence of a crime will be discovered. Also, the United States Supreme Court has expanded the *Ross* approach to permit a warrantless search of an automobile eight hours after the car was impounded on the basis that " 'the justification to conduct such a warrantless search does not vanish once the car has been immobilized.' " *Florida v. Meyers* (1984), 466 U.S. 380, 382, 104 S.Ct. 1852, 1853, 80 L.Ed.2d 381, 384, quoting *Michigan v. Thomas* (1982), 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–3081, 73 L.Ed.2d 750, 752–753; see, also, *Chambers v. Maroney* (1970), 399 U.S. 42, 46–48, 90 S.Ct. 1975, 1978–1980, 26 L.Ed.2d 419, 425–427. Importantly, the court also has extended the automobile exception to include the warrantless search of unattended automobiles parked in a public parking lot.

See *Cardwell v. Lewis* (1974), 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325. Cf. *California v. Carney* (1985), 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406.

The Supreme Court of Ohio has held the following:

"The well-established automobile exception allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure. * * * *The mobility of automobiles often creates exigent circumstances, and is the traditional justification for this exception to the Fourth Amendment's warrant requirement. * * * If the police had probable cause for the search, the search was constitutional.*" (Emphasis added.) *State v. Mills* (1992), 62 Ohio St.3d 357, 367, 582 N.E.2d 972, 982–983.

In Ohio, "[o]nce a trained dog alerts to the odor of drugs [coming] from a * * * vehicle, an officer has *probable cause* to search the vehicle for contraband." (Emphasis added.) *French,* 104 Ohio App.3d at 749, 663 N.E.2d at 372; see, also, *Carlson,* 102 Ohio App.3d at 600, 657 N.E.2d at 601; *Palicki,* 97 Ohio App.3d at 181, 646 N.E.2d at 498; *Waldroup,* 100 Ohio App.3d at 514–515, 654 N.E.2d at 394. Finally, the fact that police ·have the ability to guard an unoccupied vehicle until a warrant could be obtained does not provide sufficient grounds to make the warrantless search illegal. *State v. Robinson* (Nov. 2, 1983), Hamilton App. No. C–820909, unreported, at 11, 1983 WL 5294.

In the case *sub judice,* the police officers were invited by school officials to conduct a search for illicit contraband at SHS, a public high school, and were deployed to the school's parking lots as a part of that exercise. The police officers had probable cause to search the automobile driven by appellee to school because a police canine alerted its handler to the presence of drugs when it sniffed the exterior of appellee's vehicle. Under the rule of law pronounced in the cases of *Place, Waldroup, Palicki, French,* and *Riley,* the use of a drug sniffing dog to detect the presence of contraband, by sniffing the exterior of an object, is not a "search" within the meaning of the Fourth Amendment.

Once the canine alerted to the presence of drugs, the police had probable cause to conduct a search of appellee's automobile. Finally, pursuant to the holding in *Ross,* once the police officers had acquired the requisite probable cause, they could conduct a warrantless search of appellee's vehicle under the "automobile exception." The fact that the students were detained in their classrooms was not a factor that could prevent the police from searching appellant's vehicle, because the police had acquired probable cause prior to initiating the search. Applying the holding of *Meyers* to the facts of our case, this court is convinced that once the police were justified in searching appellee's vehicle without a warrant, that

justification did not vanish simply because the car was immobilized or temporarily beyond appellee's reach. Pursuant to *Carney* and *Lewis*, the fact that appellee's automobile was unattended also does not preclude police from conducting a warrantless search, since it was parked on public property. Thus, the warrantless search of appellant's vehicle and the contraband discovered as a result of that search did not violate appellant's Fourth Amendment rights.

For the foregoing reasons, appellant's assignment of error is with merit, the judgment of the Portage County Court of Common Pleas is reversed, and this cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

NADER, J., concurs.

WILLIAM M. O'NEILL, J., dissents.

WILLIAM M. O'NEILL, Judge, dissenting.

As stated by this court in *In re Adam* (1997), 120 Ohio App.3d 364, 697 N.E.2d 1100, "[I]t is hypocritical for a teacher to lecture on the grandeur of the United States Constitution in the morning and violate its basic tenets in the afternoon." *Id.* at 376, 697 N.E.2d at 1108. As correctly stated by the majority, the Fourth Amendment to the United States Constitution protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Constitution does not say "big people" or "grown-ups" alone are to be protected. It applies to all people.

I want all who read this dissent to imagine for a moment that half way through your reading the door swings open and police officers assisted by police dogs begin conducting a "sweep" of your space in search of probable cause that you are engaged in criminal activity. Hopefully, the prospect of being "examined" by a dog will not interfere with your ability to exercise your right to be free from unreasonable searches by your government. Applying the logic of the majority in this matter, such a violation of your rights is not only authorized by Ohio law, but for juveniles there is not even a requirement that there be reasonable suspicion of a crime for the search to begin.

Apparently we have reached a new level in our so-called "war" on drugs whereby a slow news day is sufficient justification to terrify our youngsters into believing that they have no rights whatsoever when it comes to searching them or their belongings. Let us not lose sight of the fact that the General Assembly, in R.C. 3313.20(B)(1)(b), established the "no-reason-at-all" standard for the search of students' belongings, "WITHOUT REGARD TO WHETHER THERE IS A

REASONABLE SUSPICION * * * " that a crime will be detected. Are we really that far away from total searches of students as a requirement for entrance to our schools? The random search of innocent students by police dogs without probable cause is unreasonable as a matter of law. The Constitution requires reasonableness, and this court is without authority to depart from that standard.

The majority's reasoning is incorrect when it justifies the subject blanket search on the authority of this court's holding in *In re Adam*. In that case, this court held that by smoking on school grounds, and having been discovered by a teacher who suspected he smelled marijuana, the juvenile had "voluntarily placed himself into the school's zone of inquiry * * *." *Id.*, 120 Ohio App.3d at 375, 697 N.E.2d at 1107. As stated by this court, it would be patently unreasonable to prohibit a search of the student's belongings when faced with those facts. And that really is the bottom line in this case. There are NO FACTS IN THE RECORD which justify police officers and their dogs randomly searching this school in the hope their efforts will turn up evidence of crime. Our schools are institutions of learning. They are not holding cells.

Contrary to the holding of the majority in this case, the United States Supreme Court has mandated that a search in the school environment, while understandably not restricted to the probable cause standard, still must meet the reasonableness standard mandated by the Fourth Amendment. As stated by the Supreme Court, in *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 341, 105 S.Ct. 733, 742, 83 L.Ed.2d 720, 734, "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." Such a clearly stated principle reflects two hundred years of court precedent and is at odds with the majority's suggestion that this court is awaiting "relevant precedent" as a guide. It is clear that the United States Supreme Court has directed that a reasonableness standard must be applied to a review of the individual facts of every case, and for this court to apply a lower standard is misguided at best.

Unfortunately, however, this court has not addressed the real procedural issue in this case. It is alleged that constitutional rights were violated by the police in "sweeping" the school looking for probable cause. It is to be remembered that once a motion to suppress is filed, the burden is upon the state to produce evidence that the evidence obtained was not the product of an unconstitutional search. Such an allegation, if believed, is a grave issue indeed. And yet, this matter was routinely assigned to a magistrate. The Juvenile Judge involved here is a distinguished jurist with years of experience in protecting the rights of juveniles. And yet he was deprived of the transcript of proceedings from the suppression hearing in ruling on this critical constitutional question. Compounding the error, the majority of this court now intends to rule on the same question again without reviewing the FACTS OF THE CASE.

Think about that for a moment. The trial court did not review the facts, because they did not have the transcript of the hearing before the magistrate who was without authority to conduct the hearing in the first place. Now this court intends to rule also without reviewing the facts. The result is absurd. The majority's holding in this case ratifies the action of police officers on a slow news day "sweeping" any place they find interesting in the hopes that Rin Tin Tin, given enough time and freedom, will eventually find some evidence of wrongdoing by someone.

When the trial court granted the motion to suppress, it reached the right conclusion and should be affirmed. A random search of school grounds that is not predicated upon a reasonable suspicion that criminal activity will be found is unconstitutional.