**The STATE of Ohio**

v.

**LIPPMEIER.**

Clermont County Municipal Court, Ohio.

No. 2001 CR B 04058.

Decided Jan. 31, 2002.

Thomas Scovanner, Assistant Clermont County Prosecuting Attorney, for the state.

Jeffrey S. Schwartz, for defendant.

VICTOR M. HADDAD, Judge.

{¶ 1}  This matter came before the court on December 7, 2001, pursuant to the defendant's motion to suppress.  The defendant, Joshua J. Lippmeier, was present at the hearing, represented by Jeffrey S. Schwartz.  The state was represented by Assistant Prosecutor Thomas Scovanner.  Upon hearing the testimony of Deputy DeCamp, and the argument of counsel, the court took the matter under advisement, and hereby renders the following decision.

## FINDINGS OF FACT

{¶ 2}  The events that gave rise to this case occurred on August 3, 2001, at approximately 12:17 a.m.  At that time, Deputy DeCamp of the Clermont County Sheriff's Department was patrolling in the area of Clough Pike, in Clermont County, Ohio, when he noticed the defendant driving a vehicle with an inoperative license plate light.  Deputy DeCamp then proceeded to pull the defendant over for a license plate light violation.  Once DeCamp stopped the defendant, he requested that the defendant pull into the nearby high school parking lot for safety reasons, and the defendant complied with his request.  Deputy DeCamp advised the defendant of the reason for the stop, and asked to see the defendant's driver's license.  Upon seeing the defendant's name on his license, Deputy DeCamp seemed to recall a prior contact with the defendant approximately four to five months earlier.  When Deputy DeCamp asked the defendant whether they had met before, the defendant responded affirmatively.  Based upon his recollection of the prior contact, Deputy DeCamp asked for the defendant's consent to search the car.  The defendant refused to consent to a search of his vehicle.  There was no odor of alcohol or marijuana about the defendant or the other two occupants of his vehicle.  Deputy DeCamp observed only the license plate light violation and no other offense, initially.

{¶ 3}  Deputy DeCamp proceeded to conduct a records search on the defendant and his passengers.  It was normal procedure for DeCamp to check the driving status of individuals he stopped, even when presented with a facially valid driver's license.  While awaiting a response from the communications center, Deputy DeCamp decided to conduct a "canine sniff" of the exterior of the defendant's car.  DeCamp was patrolling in a canine unit, and thus, he had Ajax, a certified narcotics dog, with him on the scene.

{¶ 4}  Ajax had been trained to detect such substances as marijuana, cocaine, methamphetamine, heroine, and derivatives thereof.  Ajax made an "alert" at the bottom seam of the passenger side front door, and alerted a second time on the

driver's side front door. As a result of the two alerts, DeCamp requested that the defendant and his passengers get out of the car. The defendant and his passengers complied with DeCamp's request, and stood off to the passenger side of the vehicle as directed. Once Deputy Stratton of the Clermont County Sheriff's Department arrived on the scene, he watched the defendant and his passengers while Deputy DeCamp continued his investigation. Deputy DeCamp then allowed Ajax inside the vehicle, and Ajax alerted to the presence of a substance in the console of the car. Deputy DeCamp then searched the console, which resulted in DeCamp's discovery of marijuana. A search of the rest of the car revealed no further contraband.

{¶ 5} The defendant was placed in Deputy Stratton's cruiser at some point during DeCamp's investigation. The defendant was given a warning for his license plate light violation and a misdemeanor citation for drug abuse, R.C. 2925.11(C)(3), and then told he was free to leave. As the defendant was being released from Deputy Stratton's cruiser, near the conclusion of Deputy DeCamp's contact with him, the defendant made a statement regarding his ownership of the marijuana found in the console.

## CONCLUSIONS OF LAW

{¶ 6} The defendant seeks to suppress the evidence found in the console of his car, on the basis that the evidence was obtained without a search warrant in violation of the Fourth Amendment to the United States Constitution. Although the defendant does not necessarily challenge the validity of the initial stop, the court must first address this issue before it addresses the validity of subsequent actions taken by Deputy DeCamp. Once a law enforcement officer observes the violation of a traffic law, he has sufficient grounds to stop the offending motorist. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091. Even de minimis traffic violations provide probable cause for a traffic stop. *State v. Young* (Dec. 31, 2001), Warren App. No. CA2001–03–019, 2001–Ohio–8622, 2002 WL 4526; *State v. Brock* (Dec. 17, 2001), Warren App. No. CA2001–03–020, 2001–Ohio–8644, 2001 WL 1598309; *State v. Mehta* (Sept. 4, 2001), Butler App. Nos. CA2000–11–232 and CA2000–12–256, 2001 WL 1001075. A motorist's failure to illuminate the rear license plate area of his vehicle gives an officer sufficient grounds to make a traffic stop. *Wilmington v. Conner* (2001), 144 Ohio App.3d 735, 761 N.E.2d 663.

{¶ 7} There is no question in the instant case as to Deputy DeCamp's grounds for stopping the defendant's car. The defendant does not dispute that the license plate light was inoperative on his car. Clearly, even if the license plate light violation is considered a de minimis violation, it still provided probable cause for Deputy DeCamp to make a traffic stop. The court finds that the

defendant's Fourth Amendment rights were not violated at the inception of the traffic stop.

{¶ 8}   The court next focuses on Deputy DeCamp's actions subsequent to the initial stop.   The scope and duration of a traffic stop may not be extended beyond what is necessary to accomplish the original purpose of the stop.   *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229; *State v. Williams* (June 18, 2001), Clinton App. No. CA2000–11–029, 2001 WL 672850.   An officer may detain a motorist to run a computer check on the driver's license, registration, and vehicle plates, and to issue a warning or citation to the driver.   *State v. Rusnak* (1997), 120 Ohio App.3d 24, 696 N.E.2d 633; *State v. Griffith* (Aug. 10, 1998) Madison App. No. CA97–09–044, 1998 WL 468803.   Even if an officer plans to issue only a warning as a result of the traffic offense, it is still reasonable for the officer to check a license prior to issuing the warning.   *State v. Shiley* (1991), 74 Ohio App.3d 230, 232–233, 598 N.E.2d 775.

{¶ 9}   A canine sniff is not an unreasonable extension of the investigative traffic stop when the purpose of the traffic stop has yet to be fulfilled.   *State v. Guckert* (Dec. 20, 2000), Washington App. No. 99CA49, 2000 WL 33226314. Therefore, a canine sniff can be conducted while the officer is awaiting the results of a license check, prior to the issuance of a citation or warning.   *Rusnak,* supra; *State v. Crowder* (May 30, 2000), Stark App. No. 1999CA00386, 2000 WL 874681; *State v. Keller* (Jan. 14, 2000), Montgomery App. No. 17896, 2000 WL 20873.

{¶ 10}   Deputy DeCamp had neither received a response from the communications center nor issued the defendant a warning for the license plate light violation at the time that he subjected the defendant's vehicle to a canine sniff. DeCamp was justified in detaining the defendant long enough to run a computer check on the defendant.   The court has been unable to find any authority that limits an officer's ability to run a computer check in the course of a traffic stop just because the officer is presented with a facially valid driver's license.   Since the goals of the traffic stop had not been accomplished at the time that DeCamp subjected the defendant's vehicle to the canine sniff, the stop was not unreasonably extended beyond its original scope.

{¶ 11}   An individual's reasonable expectation of privacy is not impinged upon when governmental conduct reveals nothing about noncontraband items.   *State v. Napier* (May 27, 1998), Medina App. No. 2671–M, 1998 WL 281368.   The courts have reasoned that since a canine sniff neither requires the opening of the object to be sniffed nor exposes the contents of the object to public view, a canine sniff does not constitute a "search" within the meaning of the Fourth Amendment.   *United States v. Place* (1983), 462 U.S. 696, 103 S.Ct. 2637,

77 L.Ed.2d 110; *State v. Carlson* (1995), 102 Ohio App.3d 585, 657 N.E.2d 591. Since a canine sniff is not considered a "search," an officer need not have any reasonable suspicion that a drug-related offense is occurring before he subjects a vehicle to a canine sniff. *In re Dengg* (1999), 132 Ohio App.3d 360, 724 N.E.2d 1255; *Carlson*, supra; *Griffith*, supra.

{¶ 12} Deputy DeCamp's decision to conduct a canine sniff of the defendant's vehicle presumably was based upon his prior contact with the defendant and the defendant's refusal to consent to a search of the vehicle. No other factors suggested any drug-related activity. While one may query whether such facts could give rise to a reasonable suspicion of drug-related activity, any such inquiry is purely academic, because the law requires no reasonable, articulable suspicion.

{¶ 13} The defendant asserts that the evidence obtained during the warrantless search of his car should be suppressed, inasmuch as no exception to the warrant requirement of the Fourth Amendment applies to the facts of this case. Once a trained drug-detection dog "alerts" to or "indicates" the presence of drug-related contraband in automobiles, a police officer has probable cause to search the automobile without a warrant pursuant to the automobile exception to the warrant requirement of the Fourth Amendment. *State v. French* (1995), 104 Ohio App.3d 740, 749, 663 N.E.2d 367; *State v. Waldroup* (1995), 100 Ohio App.3d 508, 514–15, 654 N.E.2d 390; *State v. Kilgore* (June 28, 1999), Butler App. No. CA98–09–201, 1999 WL 452235; *Griffith, supra; Williams,* supra. In these cases, the automobile exception applies due to the exigency of the situation; the inherent mobility of an automobile creates a danger that contraband will be hidden, removed, or destroyed prior to the issuance of a search warrant. *State v. Moore* (2000), 90 Ohio St.3d 47, 52–53, 734 N.E.2d 804. Deputy DeCamp was not required to obtain a search warrant once Ajax alerted twice to the presence of contraband in the defendant's car. The alerts provided all the probable cause he needed to search the interior of defendant's vehicle, and pursuant to the automobile exception, no warrant was needed.

{¶ 14} An officer having probable cause to search an automobile for contraband has the authority to search every part of the vehicle and its contents that could conceal the contraband. *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572; *Kilgore,* supra. While defense counsel questioned the various places that were searched inside the defendant's automobile, the court finds that Deputy DeCamp was justified in searching the console of defendant's car, since it was likely to contain contraband. Consoles are generally positioned halfway between the driver's and passenger's front doors, and Ajax alerted at both of these doors. Furthermore, once inside the car, Ajax alerted to a substance within the console.

{¶ 15} The court concludes that Deputy DeCamp had probable cause to stop the defendant for a traffic violation and that the scope of the stop was not extended in order for DeCamp to conduct a canine sniff. The alerts provided by Ajax created probable cause for DeCamp to conduct a warrantless search of the car, and the search did not exceed its permissible scope. The defendant's motion to suppress physical evidence is not well taken.

{¶ 16} The defendant further submits that he was never given his *Miranda* warnings, and thus, he argues that the statement he made as to his ownership of the marijuana in question should be suppressed. A police officer is required to give a suspect his *Miranda* warnings prior to conducting any custodial interrogation. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Thus, if a suspect is not *Mirandized* and gives an inculpatory statement in the course of a custodial interrogation, any such statement cannot be used against the suspect at trial. Id.; *State v. Gomez–Silva* (Dec. 3, 2001), Butler App. No. CA2000–11–230, 2001–Ohio–8649, 2001 WL 1525316. "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Staley* (May 8, 2000), Madison App. No. CA99–08–019, 2000 WL 554512, citing *Miranda*, supra. For discussion purposes, "custodial interrogation" can be broken down into its two distinct components: custody and interrogation. *Staley*, supra.

{¶ 17} To determine whether a suspect was "in custody" at the time that he made an inculpatory statement, one must determine whether the suspect was arrested, or whether there was a restraint on his freedom of movement to the degree associated with a formal arrest. *California v. Beheler* (1983), 463 U.S. 1121, 1124, 103 S.Ct. 3517, 77 L.Ed.2d 1275; *Gomez–Silva*, supra. In making this determination, the court must apply a reasonable man standard, i.e., how would a reasonable man in the defendant's position have understood the situation? *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317; *Gomez–Silva*, supra. *Berkemer* and its progeny stand for the proposition that a roadside questioning of a motorist detained for a traffic stop is generally not deemed to be a custodial interrogation. In *Berkemer*, the United States Supreme Court held that a single police officer asking a modest number of questions at a location visible to passing motorists cannot be fairly characterized as the functional equivalent of a formal arrest. Id. at 442, 104 S.Ct. 3138, 82 L.Ed.2d 317. The Supreme Court reasoned that the temporary and public nature of a traffic stop mitigated the danger that a person questioned would be induced "to speak where he would not otherwise do so freely." Id. at 437, 104 S.Ct. 3138, 82 L.Ed.2d 317. As to the temporary nature of the police contact, the Supreme Court wrote:

{¶ 18} "A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may be given a citation, but that in the end he most likely will be allowed to continue on his way." Id.

{¶ 19} The public nature of a traffic stop makes it less "police dominated" than other kinds of interrogation. "This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse." Id. at 438, 104 S.Ct. 3138, 82 L.Ed.2d 317.

{¶ 20} Relying on *Berkemer,* the Twelfth District Court of Appeals has ruled that an individual is not in custody just because he does not have the freedom to drive away from a traffic stop until the officer completes his investigation. *State v. Lafferty* (Nov. 7, 1988), Clermont App. No. 88–05–035, 1988 WL 120787; *State v. Green* (Aug. 8, 1994), Butler App. No. CA94–01–010, 1994 WL 409625. The Twelfth District further held in *State v. Johnson* (May 1, 2000), Clermont App. No. CA99–06–061, 2000 WL 525671, that even if a suspect is placed in a police cruiser for a brief period of time, this does not necessarily elevate the traffic stop to the level of a formal arrest.

{¶ 21} In light of the foregoing case law, this court concludes that the defendant was not in custody at the time that he made an inculpatory statement concerning ownership of the marijuana. First, the traffic stop in the case sub judice was brief in nature. Once the license check was completed and DeCamp issued the appropriate warning and citation, the defendant and his passengers were allowed to go on their way. Second, the defendant was stopped in public, in an environment that was not dominated by police. He and his passengers outnumbered the officers on the scene. Furthermore, there is no evidence on the record that the defendant's passengers were ever given the impression that they would need to find another way home. Defendant was never handcuffed, or subjected to any other form of physical restraint. The defendant was not searched, and the officer did not seize the defendant's keys. Under these circumstances, a reasonable man would have believed that he was free to leave once the deputy completed the purpose of the traffic stop. The fact that defendant was placed in Deputy Stratton's cruiser for a short period of time does not change the nature of the stop. In fact, the defendant's inculpatory statement was made upon his release from the cruiser, at a time when it must have been obvious that Deputy DeCamp had no intentions of arresting him.

{¶ 22} The evidence presented at the suppression hearing with respect to whether the defendant was interrogated is simply inconclusive. Interrogation encompasses not only express questioning by law enforcement officials, but also any words or action on their part that they should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297; *Staley,* supra. At one point, Deputy DeCamp testified that the defendant volunteered his statement as to the ownership of the marijuana, but later on he testified that he may have asked who the marijuana belonged to. Since the evidence is not clear as to this aspect, the court makes no finding as to whether the defendant was interrogated. The court's decision does not turn on whether the defendant was interrogated, since the noncustodial status of the defendant is dispositive of the motion at hand. If a suspect is not in custody, the fact that an officer may consciously seek to elicit incriminating statement, even where the suspect is the focus of the investigation, does not necessarily entitle the suspect to a *Miranda* warning. *Johnson,* supra, citing *Minnesota v. Murphy* (1984), 465 U.S. 420, 431, 104 S.Ct. 1136, 79 L.Ed.2d 409. Even if Deputy DeCamp directly asked the defendant whether the marijuana was his, such a question does not implicate the need for *Miranda* warnings because the defendant was not in custody. The defendant's motion to suppress his inculpatory statement is not well taken.

## CONCLUSION

{¶ 23} Based upon the competent, credible evidence presented, and the foregoing authorities and analysis thereof, the court finds that the defendant was not deprived of his Fourth or Fifth Amendment rights, and thus, there is no basis for the court to suppress the evidence as to the existence or ownership of the marijuana. The defendant's motion to suppress is hereby overruled in its entirety.

Motion denied.