The STATE of Ohio, Appellee,

v.

SPENCER, Appellant.

[Cite as *State v. Spencer* (1991), 75 Ohio App.3d 581.]

Court of Appeals of Ohio,
Montgomery County.

No. 12421.

Decided Aug. 15, 1991.

*Pamela A. Drucker,* Assistant Prosecuting Attorney, for appellee.
*Barbara V. Thompson,* for appellant.

FAIN, Presiding Judge.

James Spencer appeals from his conviction and sentence, following a no-contest plea, for drug abuse. He alleges that the trial court erred in denying his motion to suppress evidence after holding that the traffic stop of a friend's car, in which Spencer was a passenger, was a pretext to search Spencer. He further argues that it was error to convict him on a no-contest plea based solely on evidence obtained during an illegal search after the pretextual stop. From our review of the record, we conclude that the trial court did not make a finding whether the initial stop was pretextual. Therefore, we reverse the judgment and remand this cause for a finding on that issue. If the trial court finds that the stop was pretextual, then it should grant Spencer's motion to suppress.

## I

Spencer was a passenger in a Buick driven by his friend, Sonya Freeman, at about 10 o'clock one May night. Police sergeants May and Maynes testified that they saw the driver make a left turn without signalling. Maynes turned on the overhead flashing lights in their cruiser and stopped the Buick. The police officers got out of their cruiser and approached Freeman's car, one officer on each side of the car.

Testimony conflicted as to what happened next. The police testified that Maynes went to the driver's side of the car and asked her for her driver's

license; Freeman testified that the officer walked up to the window but asked her no questions and never did cite or warn her. May testified that he went to the passenger's side and noticed, as he walked up, that Spencer did not have his seatbelt fastened. He testified that he asked Spencer for his name and driver's license or identification card. Spencer mumbled a response. May claimed that he saw a "baggie" or a piece of frayed plastic in Spencer's hand and, based on his experience as a police officer making arrests for drug abuse and drug trafficking, he thought Spencer might have some sort of drug in the bag or in his mouth. May testified that he told Spencer to get out of the car and then asked him his name, but Spencer could not answer because he had something in his mouth. May told him to spit it out, and he spit a baggie onto the roof of the car. May placed him under arrest for possession of cocaine and put him in handcuffs, read him his rights, and asked about the cocaine.

Spencer's version of the facts is quite different. He said that the police were staring at him in the car before it turned left, as if they knew him and were going to pull him over. He said that there had been rumors that the police were going to "get him" because they thought he should not have been released from the penitentiary to which he had been sentenced for an incident the year before. He testified that, when the officer came up, the officer asked him whether he had a driver's license, and he told them that Freeman was driving and that he didn't have a license but that he had an identification card. He was told to get out of the car, and when he did, "he [Officer May] smashed me, threw me up against the car." He testified that the police kept asking him about drugs, that the police threatened to report him to his parole officer, whom they mentioned by name, that it was the police who had the baggie when they approached the car, and that he had not seen the cocaine until the officer threw the cocaine onto the car.

Spencer moved to suppress the evidence of the cocaine, contending that the traffic stop was a pretext to search for drugs. The trial court, with apparent reluctance, denied the motion and, on Spencer's no-contest plea, found him guilty of drug abuse and sentenced him accordingly.

## II

Spencer's first and second assignments of error are as follows:

"After correctly holding that the traffic stop was a pretext to search Spencer for drugs, the trial court erred by holding that the police still had the right to conduct a field investigation of Spencer.

"The trial court committed plain error by convicting Spencer of drug abuse based on evidence obtained solely from an investigation which was allegedly conducted because Spencer was not wearing a seatbelt."

Spencer argues that where a traffic stop is a pretext to enable the officers to search for narcotics, the search is unreasonable and violates the Fourth Amendment. He also concludes that the trial court held that the initial stop was a pretext. The state, however, argues that the trial court held that the initial stop was not a pretext. The trial court stated:

"We have two sergeants really not on patrol duty at all. They're on their way home from eating, or on the way back to duty, and Maynes is going to drop May off at the Third District; and they both testify that they see a car about to make a left turn. I believe from Rosedale on to Grand. And when the car turns, the car doesn't turn on its signal.

"I'm a born skeptic. I'm not here to check my gullibility some place else. I may be gullible, but how many automobiles would have been stopped by Sergeant Maynes and May that night for failure to turn on their left turn signal? If they had been at the corner of [Shafor] and West Dorothy Lane, you think they would have stopped the car?

"Let's get past that point though. They had a right to stop the car. I guess you can stop a car for failure to turn on a left turn signal * * * in accordance with the law. So let's assume that they did have a right to stop the car even though they weren't on patrol duty, and I think it's extraordinary, extraordinary for two sergeants to do that under these circumstances, particularly in light of Sergeant Maynes' testimony that this isn't any longer a high drug area since they've [torn] down the apartments on Windsor. I have a problem with that testimony, Sergeant. I happen to believe that Rosedale and Grand is still a pretty troublesome area, but you know more about that than I do, so we'll accept your word for it that it's not troublesome. Gives me all the more reason to wonder why you stopped this car.

"In any event, let's get past the issue here and accept for a moment the fact that they had a right to stop this car."

The trial court expressed further doubts about the testimony of the police regarding what they allegedly saw and heard in the night, and then continued:

"This gives every indication of a pretextural [sic] stop. The only hesitation I have in kicking this case out is you do have a right to ask a man his name, I guess, ask for identification. I'm going to accept your testimony, Sergeant, in that regard and that saves your case insofar as I'm concerned. I want you to know that the time has got to come when you can't rewrite the constitution to fit the situation. You just can't do it. Based upon your right to ask the man for identification, based upon his inability to talk, based upon his spitting the cocaine out, I'm going to overrule the motion to suppress with great reluctance, the reasons being as I articulated into the record."

Thus, although the trial judge said that the stop gave "every indication" of being pretextual, he did not actually make a finding, either way, as to whether it was, in fact, pretextual. The trial court found it unnecessary to resolve that disputed issue of fact, having concluded that even if the initial stop was pretextual, the police had a right to ask Spencer his name, so that everything that followed was permissible. We do not agree.

█ A police stop of a motor vehicle is a significant intrusion requiring justification of a seizure within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution. *State v. Heinrichs* (1988), 46 Ohio App.3d 63, 66, 545 N.E.2d 1304, 1307. If the initial traffic stop was a pretext to search for drugs and there were no specific and articulable reasons to stop the car to search for drugs, the stop on a pretext of a traffic violation is not permitted; such a stop is a general and unreasonable search that is constitutionally prohibited by both the federal and state constitutions. If the traffic stop was a pretext for searching for drugs and therefore prohibited, then all the fruits of that stop should have been suppressed. On the other hand, if the stop was not pretextual, then the trial court would be justified in denying the motion to suppress.

█ The test for a pretextual search "is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." (Emphasis *sic*.) *United States v. Smith* (C.A.11, 1986), 799 F.2d 704, 709. See, also, 1 LaFave, Search and Seizure (2 Ed.1987) 90–97, (Supp. 1991) 14–16, Section 1.4(e), and the cases cited therein. From the record, it is clear that the trial court in the case before us concerned itself only with whether the investigative stops and seizures of the driver and of Spencer, respectively, could have been validly made. We agree with the trial court's conclusion that they could have been validly made. The issue, however, is whether they *would* have been made by a reasonable officer under all of the circumstances. The trial court indicated a healthy skepticism as to whether a reasonable officer would have made these stops and seizures (of the driver and then of Spencer, respectively), but found it unnecessary to make a finding on this issue because of its conclusion, which we find to have been erroneous, that the stops and seizures must be upheld if they could have been lawfully made.

The trial court was appropriately concerned about constitutional rights and the necessity for the police to follow the law. For example:

"I'm troubled by this case. We don't clean up drug problems by trampling on constitutional rights of people. I'm very concerned with rewriting the

constitution to fit the situation. I want every police officer to know that when they come in this court."

Although the trial court apparently was skeptical concerning the police version, we cannot determine from the transcript whether this skepticism actually resulted in a finding that the stop was a pretext. Where there is conflicting evidence, the trial court must determine whether a stop is pretextual. See *State v. Holley* (Dec. 14, 1989), Montgomery App. No. 11615, unreported, 1989 WL 150796.

If the stop was a pretext, then it was error to deny the motion to suppress the evidence obtained in the warrantless search of Spencer.

Because both assignments of error turn upon whether the initial stop was pretextual, they are sustained, since the record suggests that the trial court was concerned that the initial stop was pretextual but made no finding as to this critical fact, having erroneously concluded that it was immaterial.

### III

Both of Spencer's assignments of error having been sustained, at least in part, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion. These proceedings should begin with a factual determination whether the initial stop was pretextual. If it was, then the evidence should be suppressed. If the trial court should determine that the initial stop was not pretextual, it must then determine whether the further intrusion upon Spencer's privacy, allegedly based upon his failure to wear a seatbelt, was pretextual. As the trial court so aptly stated, "We don't clean up drug problems by trampling on constitutional rights of people."

*Judgment reversed*
*and cause remanded.*

BROGAN and GRADY, JJ., concur.