I concur in the principal opinion's analysis and judgment. I write to further address the officer's "threat" to bring a drug detection dog to the scene of the traffic stop.
Initially, I note that it is not disputed that the officer possessed an adequate constitutional basis for the traffic stop.[1] The parties disagree, however, about the significance of certain events that occurred during the officer's investigation. The parties' argument focuses upon the vehicle's passengers' responses to the officer's question about the presence of drugs in the vehicle. Both parties offer differing views as to whether the response was equivocal, and whether the response provided support for the officer to "expand" the focus and scope of the investigation. It is my opinion, however, that the issue in the instant case does not hinge on the type of response to the officer's question. Rather, the central issue is the propriety of the officer's comment regarding the use of the drug detection dog and whether this statement could vitiate appellant's consent to search.
I fully agree with the principal opinion that the scope and duration of an investigative stop must be limited to effectuate the purpose for which the investigative stop was made. State v. Venham (1994),96 Ohio App.3d 649, 645 N.E.2d 831. As the principal opinion points out, however, a law enforcement officer may, during the course of a traffic stop, question motorists about drugs or weapons or other criminal activity. State v. Robinette (1997), 80 Ohio St.3d 234, 685 N.E.2d 762;Garfield Heights Metropolitan Park District v. Skerl (Nov. 4, 1999), Cuyahoga App. No. 74545 and 74555, unreported. An officer is not required to limit questions solely to the scope and purpose of the initial traffic stop. An officer's questions, even on a subject unrelated to the immediate purpose of the traffic stop, does not constitute a violation of the Fourth Amendment of the United States Constitution. See State v. Carlson (1995), 102 Ohio App.3d 585,657 N.E.2d 591, citing U.S. v. Shabazz (C.A.5, 1993), 993 F.2d 431. See, also, Robinette, supra, citing Florida v. Royer (1983), 460 U.S. 491.
In U.S. v. Letourneau (N.D. Ohio, 1996), 944 F. Supp. 619, the court noted that an officer could, during a traffic stop, ask a vehicle's occupants whether they possessed drugs or contraband. The court noted that merely asking the question, even if the question is not narrowly related to the facts surrounding the traffic violation, is not necessarily over intrusive. The Letourneau court further noted, however, that detainees are, of course, not required to answer such questions or cooperate with an officer in any manner.
At this juncture it is important to note that, contrary to the parties' positions, the facts of this case do not present a situation which involves an officer, during the course of an investigative stop, observing additional articulable facts or information which gives rise to the suspicion of criminal activity beyond the activity that formed the basis for the initial investigative stop. If additional information surfaces during a traffic stop, an officer may expand the investigation and detain a suspect for an additional time even if the concerns that supplied the basis for the initial stop have dissipated. State v.Eggleston (1996), 109 Ohio App.3d 217, 671 N.E.2d 762; State v. Griffith
(Aug. 10, 1998), Madison App. No. CA97-09 — 044, unreported;Robinette, supra. In the case sub judice, however, the critical issue is the officer's veiled threat to summon a drug detection dog to the scene of the traffic stop. In other words, we need not address appellant's response to the officer's question and determine whether the response could have permitted the officer to expand the investigation's scope.
In the case sub judice, I find that the officer's statement that he could bring a drug detection dog to the scene of the traffic stop does not automatically negate the appellant's subsequent consent to a search. I note that the officer's statement about the dog did not provide false information and did not indicate that the officer was prepared to act beyond the scope of his authority. Courts have consistently held that drug detection dogs may be used during traffic stops without any independent basis for the performance of the drug sniff.[2] Moreover, in the instant case the officer's statement about the dog was not improper or inaccurate and the officer did, in fact, possess the authority to summon a drug detection dog to the scene of the traffic stop.
The case at bar does not present a situation that involves an officer acting beyond the scope of his authority or falsely asserting that he possesses a valid search warrant. If a law enforcement officer did falsely assert that he possessed a search warrant in order to convince a suspect to consent to a search, the suspect's consent will be deemed to be invalid. See Bumpert v. North Carolina (1968), 391 U.S. 543; State v.Clelland (1992), 83 Ohio App.3d 474, 615 N.E.2d 276. See, also, 3 LaFave, Search and Seizure (1996) 649-655, Section 8.2 (c). Coercion is inherent in false claims of authority. The officer could indeed lawfully bring the dog to the scene.
Moreover, I note that generally, threats regarding an officer's intent to apply for a search warrant constitutes one factor that courts should consider, in conjunction with all other facts and circumstances, when determining voluntariness in a consent to search context.
The dissenting opinion, while acknowledging that an officer may ask a traffic stop detainee about the presence of drugs or weapons in the vehicle, asserts that the officer's statement regarding the drug detection dog expanded the scope of the traffic stop. While I agree that this factual scenario raises a troublesome issue, courts have uniformly held that a drug detection dog may be used without satisfying any prerequisite or standard (e.g. reasonable suspicion of criminal activity) Again, the officer in the case sub judice did have the authority to bring a drug detection dog to the scene of the traffic stop. Thus, the officer's statement should not be used as a basis for negating appellant's consent to search.
Accordingly, I agree with the principal opinion that the trial court's judgment should be affirmed.
[1] The principal opinion correctly states that the investigating officer questioned the vehicle's occupants about the presence of drugs prior to the traffic stop's completion. It thus appears that the officer mentioned the possible drug sniff during the traffic stop's investigation phase and prior to the issuance of a citation or warning. In other words, no evidence exists to indicate that the officer prolonged the period of detention beyond the time required to complete the traffic stop. Accordingly, we are not confronted with a scenario involving an unlawful detention.
[2] The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to the dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. See State v. Carlson (1995) 102 Ohio App.3d 585,657 N.E.2d 591; United States v. Seals (C.A.5 1993), 987 F.2d 1102. More than a decade ago, the United States Supreme Court held that the use of dogs to detect drugs in luggage does not violate any reasonable expectation of privacy and, thus, implicated no Fourth Amendment concerns. SeeUnited States v. Place (1983), 462 U.S. 696. Subsequently, that principle was extended to automobiles. See United States v. Holloman
(C.A.11 1997), 113 F.3d 192; United States v. Seals (C.A.5 1993),987 F.2d 1102.
Thus, today it is well-established that the use of dogs to detect drugs in an otherwise lawfully detained vehicle does not arouse any search and seizure concern under either the United States Constitution or the Ohio Constitution. See State v. French (1995), 104 Ohio App.3d 740,663 N.E.2d 367; Carlson, supra; State v. Waldroup (1995),100 Ohio App.3d 508, 654 N.E.2d 390; State v. Riley (1993),88 Ohio App.3d 468, 624 N.E.2d 302; State v. Blednick (Nov. 5, 1997), Summit App. No. 18395, unreported; State v. Poole (June 7, 1995), Medina App. No. 2338-M, unreported; State v. Johnson (Sept. 29, 1995), Seneca App. No. 13-95-30, unreported.
Additionally, many Ohio courts have noted that if a legitimate traffic stop is under active investigation, a drug detection dog may be used to determine the presence of illegal drugs if the length of the time the suspect was detained prior to the sniff was short. See State v. Rusmak
(1997), 120 Ohio App.3d 24, 696 N.E.2d 633; State v. Carlson (1995),102 Ohio App.3d 585, 657 N.E.2d 591; State v. Bradford (July 8, 1998), Medina App. No. 2752-M, unreported; State v. Anderson (Dec. 13, 1995), Lorain App. No. 95CA6052, unreported; State v. Poole (June 7, 1995), Medina App. No. 2336-M, unreported; State v. Shook (June 15, 1994), Lorain App. No. 93CA5716, unreported; State v. Green (May 14, 1999), Wood App. No. WD-98-068, unreported.