OPINION
Appellant, the state of Ohio, appeals a judgment entry from the Portage County Court of Common Pleas granting the motion to suppress of appellee, Recy Kelly.
On June 21, 2000, appellee was indicted on possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(a). Appellee was arraigned on July 24, 2000, and entered a plea of not guilty to the charge. On October 3, 2000, he filed a motion to suppress evidence. A hearing on the motion to suppress was held on October 25, 2000.
The evidence at the hearing revealed that on the evening of December 16, 1999, Officer Dustin Svab ("Officer Svab") of the city of Ravenna Police Department was on routine patrol. He observed a vehicle with its high beams illuminated and noticed that the car had "some sort of exhaust problem ***." As the auto passed him, he saw "that the muffler *** underneath the back of the car, was hanging down and twisted sideways." At that point, he turned around and made a traffic stop. He initiated the traffic stop based on the failure to dim high beams, as well as the exhaust violation.
Officer Svab approached the driver of the car and explained the reason for the stop. The vehicle contained two passengers, a female and appellee. Officer Svab got the impression from the occupants that they were concealing something because the female passenger placed her hand under her shirt. He testified that he was concerned there may have been a weapon. Officer Svab took information from all three occupants and called it in to the dispatcher. He also asked for the canine handler to come to the scene for assistance because he had personal knowledge of appellee from a prior police encounter, coupled with his observation of the behavior in the car.
While waiting for the canine handler to arrive, Officer Svab began issuing the driver a written warning for his equipment violations. Patrolman Mark Angelo Cooper ("Patrolman Cooper"), the canine handler from the Ravenna Police Department, came to the scene and his dog began sniffing around the exterior of the car. Officer Svab revealed that the dog "picked up some sort of drug or a contraband odor in the vehicle ***." Officer Svab and Patrolman Cooper had the driver exit the auto and patted him down. They also searched the female passenger and appellee. They located nothing on the driver and the female occupant.
Officer Svab indicated after performing an initial pat down of appellee, since he was wearing tall boots, they asked him if they could untie "the top of his boots to check the inside *** [b]ecause on a prior occasion [when Officer Svab] dealt with [appellee, he] had found a crack pipe in the rear of one of the cruisers immediately after [appellee] was released from the cruiser and [he] hadn't detected it when [appellee] went into the car." On that prior occasion, appellee's boot was not checked, so they checked it to make sure there was no knife or anything. Patrolman Cooper located a long slender gold glass tube, which was a crack pipe, and appellee was placed under arrest. Officer Svab wanted to check the other boot, but appellee was not cooperating. After a struggle, the officers managed to check the other boot. They located another pipe and a substance, which was later determined to be crack cocaine.
Patrolman Cooper testified that when he arrived at the scene, it looked suspicious as there were two people sitting in the rear of the car and one in the front. Officer Svab asked him to take the dog around the car and do a drug sniff since appellee was in the auto. On cross-examination, Patrolman Cooper also revealed that he knew appellee from prior dealings and that was the reason he was called to the scene with the drug dog.
At the conclusion of the suppression hearing, the trial judge stated that:
 "*** [if] you get stopped for a minor misdemeanor, [and] here comes the dog. [I] find that offensive, because if it was Dave Dix stopped out here in front of the Courthouse with a couple passengers in the car, you would not see the dogs.
 "[I] hope the days [are not] gone where you give a guy a traffic ticket if he does something wrong and then that's the end of that thing if the passengers are sitting there minding their own business."
 In a judgment entry dated October 25, 2000, the trial court granted appellee's motion to suppress. Appellant timely filed the instant appeal from that entry, pursuant to Crim.R. 12(J), and now asserts the following as error:
 "The trial court erred when it granted [appellee's] motion to suppress evidence seized during a lawful search."
 Appellant argues that the trial court erred by suppressing evidence seized from appellee since the officers had reasonable suspicion to search him.
It is well established that an officer's observation of any traffic law violation constitutes sufficient grounds to stop the vehicle observed violating such law. Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12. Here, Officer Svab testified that he observed a vehicle with its high beam lights on as well as an equipment violation. It is our determination that he had probable cause to stop the car in which appellee was a passenger. Neither party disputes this point.
We must next conclude if a continued detention was reasonable. An officer does not have the authority to automatically conduct a frisk of a detainee when a valid stop has been initiated. State v. Kish (Nov. 5, 1999), Lake App. No. 98-L-148, unreported, 1999 WL 1073615, at 3. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." State v. Bobo (1988), 37 Ohio St.3d 177, paragraph two of the syllabus.
Additionally, a police officer is permitted under certain circumstances to conduct a limited protective search of a detainee's person for concealed weapons. State v. Evans (1993), 67 Ohio St.3d 405, 408. The purpose of this limited search is to allow an officer to pursue an investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of a crime. Id. When an officer is conducting a lawful Terry search for weapons, he may "seize nonthreatening contraband when its incriminating nature is `immediately apparent' to the searching officer through his sense of touch." Id. at 414, fn. 5. However, during the search, an officer is prohibited from handling an object previously determined not to be a weapon in order to establish its incriminating nature. Id.
In the case at bar, Officer Svab testified that he stopped a car because its high beams were illuminated. When he spoke with the driver, he noticed appellee and remembered him from a previous encounter. Officer Svab then returned to his cruiser to issue the driver a warning for the equipment violations and he radioed for backup. He specifically requested a canine handler.
The United States Supreme Court concluded that since a canine sniff does not require the opening of the object to be sniffed, nor does it expose the contents of the object to public view, it is not a search within the meaning of the Fourth Amendment of the United States Constitution. United States v. Place (1983), 462 U.S. 696, 707; Statev. Keller (2000), Montgomery App. No. 17896, unreported, 2000 WL 20873, at 4. Further, because the use of a drug canine is not a search, an officer does not need a reasonable suspicion that a drug-related activity is occurring in order to request that a drug dog be brought to the scene or to conduct a drug sniff of the vehicle. In re Dengg (May 3, 1999), Portage App. No. 97-P-0113, unreported, 1999 WL 259838, at 4. Once a trained dog signals the odor of drugs coming from a car, a police officer has probable cause to search the vehicle for contraband. Id. at 5, citingState v. French (1995), 104 Ohio App.3d 740, 749.
In the case sub judice, Officer Svab and Patrolman Cooper had probable cause to search the interior of the car once the canine alerted its handler to the presence of drugs. However, neither officer searched the interior of the car. Instead, they had the occupants exit the automobile and searched them. There was no claim the dog "indicated" that appellant had drugs on his person. In State v. Moore (2000), 90 Ohio St.3d 47,51-52, the Supreme Court of Ohio stated that:
 "The overriding function of the Fourth Amendment is to `protect personal privacy and dignity against unwarranted intrusion by the State.' *** Therefore, in the absence of an exception to the warrant requirement, the search of [a] defendant's person is unlawful. ***
 "However, certain situations present exigent circumstances that justify a warrantless search. Generally, there must be `compelling reasons' or `exceptional circumstances' to justify an intrusion without a warrant. *** For example, the concept of exigency underlies the automobile exception to the warrant requirement. The inherent mobility of the automobile created a danger that the contraband would be removed before a warrant could be issued. *** A warrantless search is also justified if there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted. ***
 "Because marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence. ***" (Citations omitted.)
 In Moore, the officer had probable cause to believe the defendant had been smoking marijuana based on the strong odor of burnt marijuana that emanated from the vehicle and on the defendant when the officer stopped him. The Supreme Court explained that in order to obtain a warrant before searching the defendant's person, the officer would have had to let the defendant leave the scene unaccompanied, which would have led to the dissipation of the odor and the possible loss or destruction of the evidence. Hence, the Court stated that these were "exigent circumstances" justifying the warrantless search of the defendant's person. Id. at 52-53.
On the other hand, in the situation before us, Officer Svab testified that he felt that because of movement by the passengers in the auto, they might have been carrying a weapon. Therefore, he had all three occupants exit the vehicle. A pat down search was conducted on the driver and the female passenger, but nothing was found. After an initial pat down of appellee, the officers requested that he unlace his boots for a further search. Officer Svab testified that based on his prior experience with appellee, he suspected that appellee may have had a knife or other contraband in his boots. Following the arrest of appellee on a prior occasion, Officer Svab claimed that he found a crack pipe in his cruiser after taking appellee to the Ravenna Police Department for processing purposes. However, there is nothing in the record before us to establish that appellee was the individual who placed that contraband on the floor of Officer Svab's cruiser. Further, his prior experience only involved a suspicion of drug paraphernalia, not weapons. As previously indicated, per Terry, the pat down could only initially address safety issues, not generally contraband issues.
Based on the initial pat down of appellee, the record does not demonstrate that anything was "immediately apparent" to either Officer Svab or Patrolman Cooper as contraband, and thus, its subsequent removal was not justified. It is our view that the officers searched appellee more thoroughly based solely on a prior experience Officer Svab had had with appellee. Thus, there were no "exigent circumstances" to justify conducting a further warrantless search of appellee's person.
For the foregoing reasons, appellant's assignment of error is not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
PRESIDING JUDGE DONALD R. FORD, CHRISTLEY, J., concurs, GRENDELL, J., dissents.