OPINION
{¶ 1} Appellant, Vincent Matteucci, appeals from a final judgment of the Lake County Court of Common Pleas wherein he pled no contest to possession of cocaine after his motion to suppress was denied. For the reasons that follow, the judgment of the trial court is affirmed.
 {¶ 2} The following facts were adduced at the suppression hearing. At approximately 8:38 p.m., on March 1, 2001, Patrolman Matthew Tartaglia ("Patrolman Tartaglia") of the Willoughby Police Department observed appellant's vehicle traveling eastbound on State Route 2 with one of its headlights burned out. As a result, Patrolman Tartaglia effectuated a traffic stop of appellant's vehicle.
 {¶ 3} Upon approaching the passenger side of the vehicle, Patrolman Tartaglia observed appellant in the driver's seat along with a female passenger later identified as Kimberly Phalen ("Ms. Phalen"). Patrolman Tartaglia advised appellant why he had been stopped and requested identification from appellant and Ms. Phalen. Patrolman Tartaglia also asked appellant and Ms. Phalen where they were coming from. Appellant claimed that they were coming from Eastlake, while Ms. Phalen responded that they were coming from Cleveland.
 {¶ 4} While speaking with Ms. Phalen, Patrolman Tartaglia noticed that she was "very nervous, hands were shaking, seemed almost uncontrolled, couldn't explain herself." Appellant, however, "was pretty well collected but he was interrupting [Ms. Phalen's] answers *** and basically fill[ed] in her answers."
 {¶ 5} After obtaining the identification, Patrolman Tartaglia returned to his patrol car to run a check on his computer. As he was doing so, Patrolman Tartaglia observed appellant and Ms. Phalen "shuffling around in the car, moving around where you would be hunching down underneath the seat[.]" Patrolman Tartaglia explained that he found those movements significant because appellant and Ms. Phalen seemed to be hiding something, and there was no reason for their movement:
 {¶ 6} "Q. Did you find those movements significant?
 {¶ 7} "A. Yes, I did.
 {¶ 8} "Q. Why is that?
 {¶ 9} "A. It seemed to be hiding, providing me with identification, making somebody need to get a driver's license or wallet, but I already obtained that information, so what else would you be doing.
 {¶ 10} "Q. So, you mean he [appellant] had nothing else to be looking for?
 {¶ 11} "A. Correct."
 {¶ 12} In response to the situation, Patrolman Tartaglia contacted Patrolman Negrea and advised him that "[he] had [appellant] on a traffic stop and they [appellant and Ms. Phalen] were acting very suspicious and very evasive during questioning, as well as mak[ing] the furtive movements inside the vehicle." Thus, Patrolman Tartaglia requested that Patrolman Negrea acquire a drug sniffing dog. While Patrolman Tartaglia was writing the citation, Patrolman Negrea arrived on the scene at 8:45 p.m.
 {¶ 13} Prior to having the trained narcotics dog walk around the vehicle, Patrolman Tartaglia asked appellant for consent to search the vehicle. When appellant declined, Patrolman Tartaglia had appellant and Ms. Phalen exit the vehicle.[1]
 {¶ 14} Once appellant exited the vehicle, Patrolman Tartaglia noticed that appellant had both hands inside his coat pockets. Patrolman Tartaglia ordered appellant to remove his hands from his pockets because the officer "[did not] know what [appellant] ha[d] in his pockets." Appellant complied by removing only his right hand from the coat pocket. Patrolman Tartaglia repeated the command for appellant to remove his hand from his pocket. Appellant, however, failed to comply.
 {¶ 15} At that point, Patrolman Tartaglia "[p]ulled [appellant's] hand out of hi[s] pocket, touched on the outside of the coat and felt something hard inside his jacket." According to Patrolman Tartaglia, the object was "square, rectangular shape. *** [I]t felt like one [object], just patting through the leather coat seemed sort of large, but through the coat definitely something hard inside the coat pocket." Based on these observations, Patrolman Tartaglia assumed that the object "was a knife or weapon of some sort." Patrolman Tartaglia then proceeded to reach into appellant's coat pocket and pulled out two cigarette lighters, as well as five rocks of crack cocaine individually wrapped in a plastic material.
 {¶ 16} During the altercation between Patrolman Tartaglia and appellant, Patrolman Negrea walked the dog around appellant's vehicle. The dog alerted that there were illegal drugs present in the vehicle by barking and scratching at the passenger door. A search of appellant's vehicle resulted in the discovery of narcotics.
 {¶ 17} As a result of these events, on April 20, 2001, appellant was indicted by the Lake County Grand Jury on two counts of possession of crack cocaine, to wit: 2.66 grams and .75 grams, felonies of the fourth and fifth degree, in violation of R.C. 2925.11. Appellant entered a plea of not guilty to the charges.
 {¶ 18} On June 1, 2001, appellant filed a motion to suppress all the evidence obtained as a result of the stop and search of his person and his vehicle. After conducting a hearing, the trial court issued a judgment on August 13, 2001, denying appellant's motion to suppress.
 {¶ 19} Thereafter, on August 24, 2001, appellant entered a plea of no contest and was found guilty of count one, to wit: possession of cocaine in the amount of 2.66 grams, a felony of the fourth degree, in violation of R.C. 2925.11. Upon application by the state, the trial court entered a nolle prosequi as to the remaining charge.
 {¶ 20} On October 15, 2001, the trial court issued a judgment entry sentencing appellant to five years of community control with numerous conditions. Appellant's sentence was stayed pending the outcome of this appeal.
 {¶ 21} From this judgment, appellant filed a timely notice of appeal with this court, advancing a sole assignment of error for our consideration:
 {¶ 22} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion to suppress."
 {¶ 23} Because the lone assignment of error challenges the trial court's decision to deny appellant's motion to suppress, we will lay out the appropriate standard of review.
 {¶ 24} At a hearing on a motion to suppress, the trial court functions as the trier of fact. As such, the trial court it is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284, 288;State v. DePew (1988), 38 Ohio St.3d 275, 277; State v. Fanning (1982),1 Ohio St.3d 19, 20.
 {¶ 25} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 592; State v. Guysinger
(1993), 86 Ohio App.3d 592, 594; State v. Klein (1991), 73 Ohio App.3d 486,488. After accepting such factual findings as accurate, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. Retherford at 592; Klein at 488.
 {¶ 26} Returning to the single assignment of error, appellant advances three separate issues for our review. We will consider each one in turn.
 {¶ 27} At the outset, we note that appellant concedes that the nonfunctioning headlight provided Patrolman Tartaglia with a reasonable basis for effectuating a traffic stop. Thus, appellant does not contest the propriety of the initial stop.
 {¶ 28} Instead, appellant first claims that any constitutionally permissible seizure of him terminated when the citation was completed. According to appellant, any continued detention of him beyond this point constituted an illegal seizure because it was not based on any specific and articulable facts that criminal activity was afoot.
 {¶ 29} "An investigative stop may last no longer than necessary to achieve the purpose of the stop. *** For example, where the stop is based upon a reasonable suspicion that a motorist has committed a traffic violation, an officer may detain the motorist only long enough to issue a warning or citation." State v. French (1995), 104 Ohio App.3d 740, 747. See, also, State v. Chatton (1984), 11 Ohio St.3d 59, 63.
 {¶ 30} "However, if circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues, even if the officer is satisfied that the suspicion that justified the stop initially has dissipated." State v. Myers (1990), 63 Ohio App.3d 765, 771. See, also, French at 747; State v. Burdick (May 26, 2000), 11th Dist. No. 98-G-2209, 2000 Ohio App. LEXIS 2264, at 10. In determining whether a detention is reasonable, the court must look at the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, 178.
 {¶ 31} It is critical to note that prior to writing or issuing the citation, Patrolman Tartaglia developed reasonable suspicion of further criminal conduct which justified the continued detention of appellant. See, generally, Mentor v. Fedor (Sept. 15, 2000), 11th Dist. No. 99-L-166, 2000 WL 1335707, at 1-2; Burdick at 10-11. This was based on the following facts: (1) Ms. Phalen appeared very nervous and her hands were shaking; (2) when Patrolman Tartaglia questioned Ms. Phalen, appellant interrupted Ms. Phalen's answers and "fill[ed] in her answers[;]" (3) appellant and Ms. Phalen provided different answers as to where they were coming from; (4) while Patrolman Tartaglia was in his patrol car running a check on his computer, he observed furtive movement by appellant and Ms. Phalen inside appellant's vehicle.
 {¶ 32} Under the totality of the circumstances, Patrolman Tartagalia had reasonable suspicion of additional criminal activity to continue the detention of appellant. See, e.g., State v. Kilgore (June 28, 1999), 12th Dist. No. CA98-09-201, 1999 WL 452235, at 3 (holding that a police officer had reasonable suspicion to continue the stop and have a trained narcotics dog examine the vehicle when the defendant appeared extremely nervous, his answers to questions conflicted with that of the passenger, and both the origin and destination of defendant's travels were known drug locations); Fedor at 2 (holding that the police officer had reasonable suspicion to extend the detention of the driver and passenger when, prior to the issuance of a warning, the driver seemed unusually nervous, his hands were shaking, he broke out into a sweat, and he reached under his seat).
 {¶ 33} Next, appellant seems to challenge the use of the trained narcotics canine and the subsequent search of his vehicle. Specifically, appellant argues that the traffic stop must be under active investigation and the length of the detention prior to the canine sniff must be minimal. According to appellant, Patrolman Tartaglia completed the citation in his cruiser and then requested appellant's consent to search his vehicle. From this, appellant concludes that the traffic stop was no longer under active investigation.
 {¶ 34} If a vehicle has been lawfully detained, the exterior sniff by a trained narcotics dog to detect the presence of illegal drugs does not constitute a search because it does not violate a reasonable expectation of privacy. State v. Rusnak (1997), 120 Ohio App.3d 24, 28; French at 749; State v. Carlson (1995), 102 Ohio App.3d 585, 594. As such, "Ohio courts have held that police need not have a reasonable suspicion of drug-related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff." Rusnak at 28.
 {¶ 35} In the preceding discussion, we determined that prior to writing or issuing the citation, Patrolman Tartaglia had reasonable suspicion of further criminal conduct to justify the continued detention of appellant. Thus, contrary to appellant's contention, the continued detainment of him until Patrolman Negrea arrived with the drug-sniffing canine was lawful. Furthermore, waiting for the canine unit for approximately seven minutes did not infringe on appellant's rights. Kilgore at 3 (holding that waiting on a drug dog for only five minutes was reasonable).
 {¶ 36} As for the search of appellant's vehicle, "[o]nce a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." French at 749. In the instant matter, given that the canine alerted the officers to the presence of narcotics by barking and scratching at the passenger door, the subsequent search of appellant's vehicle was lawful.
 {¶ 37} In the third and final issue presented under the lone assignment of error, appellant challenges the pat-down conducted by Patrolman Tartaglia, which led to the seizure of five rocks of crack cocaine.[2] As to this point, we note that count two of the indictment alleged that appellant was in possession of .75 grams of crack cocaine. This count, presumably, stemmed from the five rocks of crack cocaine discovered on appellant's person.
 {¶ 38} Given that the trial court entered a nolle prosequi as to count two, appellant's challenge to the search of his person is moot. Further, the pat-down was unrelated to the ultimate discovery of the narcotics in appellant's vehicle. We, therefore, decline to address the issue which relates to count two.
 {¶ 39} Based on the foregoing analysis, appellant's single assignment of error is without merit. Accordingly, the judgment of the trial court is affirmed.
DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.
[1] As an aside, we note that "the ordering of defendant to get out of his car was proper even if the officers were unable to articulate a reasonable suspicion which promoted this action." State v. Evans (1993),67 Ohio St.3d 405, 408. Therefore, it was proper for Patrolman Tartaglia to ask appellant and Ms. Phalen to exit the vehicle.
[2] Pursuant to Patrolman Tartaglia's affidavit contained in the appellate record, five rocks of crack cocaine were discovered on appellant's person while fifteen rocks of crack cocaine were found in appellant's vehicle.