OPINION
{¶ 1} Shem Lamont Heard pled no contest to possession of crack cocaine after the Montgomery County Court of Common Pleas overruled his motion to suppress. The court found him guilty and sentenced him to one year of imprisonment and a three-year license suspension.
 {¶ 2} The state's evidence established the following facts.
 {¶ 3} At approximately 8:53 p.m. on August 30, 2001, Officers Jimmy Howard and William Swisher of the Dayton Police Department were dispatched to 1260 Dietzen Street based upon a call from an informant. The informant, who gave his name and address, told the dispatcher that there was a white car on Dietzen Street waiting for a green car to engage in a drug transaction. Officers Howard and Swisher arrived at 1260 Dietzen Street within four minutes after the dispatch and observed a green Jeep parked behind a white Oldsmobile. The officers pulled up behind the green Jeep and activated the overhead lights on their marked cruiser. They observed Heard, a black male, leaning into the driver's side window of the white Oldsmobile. Upon spotting them, Heard stood up from the window and walked with his fist clenched to the front of the white Oldsmobile. When he was in front of the car, he relaxed and opened his hand. He then continued around the white Oldsmobile on the passenger side toward the Jeep. When he reached the Jeep, he leaned his arms and head inside the passenger window.
 {¶ 4} After Heard had leaned into the Jeep, Officer Howard approached the occupants of the white Oldsmobile and asked them what they were doing. The driver, David Lannigan, told him that they were waiting for someone to discuss buying a car. While Officer Howard was speaking with the occupants of the Oldsmobile, Officer Swisher spoke to Heard. Heard told Officer Swisher that he was walking to his father's house, which was apparently the house in front of which the cars were parked. Officer Swisher asked Heard if he would sit in the police cruiser. Heard asked if he was under arrest and, when Officer Swisher responded negatively, voluntarily opened the door of the police cruiser and sat inside. Heard asked Officer Swisher if he would check on Heard's girlfriend, the passenger of the green Jeep, who was pregnant. Officer Swisher complied, asking the woman if she would be more comfortable outside of the Jeep. She responded affirmatively and exited the vehicle.
 {¶ 5} Following these conversations, Officers Howard and Swisher conferred with each other. Based upon the tip from the informant, their own observations upon arriving at the scene, and the conflicting stories given by Heard and Lannigan, they decided to call for a drug sniffing dog. The officers estimated that approximately five to ten minutes had passed between the time of their arrival and the time they called for the drug sniffing dog. Officer Michael Lally arrived with a drug sniffing dog within five minutes after Officers Howard and Swisher called him.
 {¶ 6} Upon Officer Lally's arrival with the drug sniffing dog, the dog was taken around the green Jeep. It alerted on both the driver's and passenger's side front doors. Based upon the alert, Officers Lally and Swisher searched the vehicle. Officer Swisher discovered a baggy of crack cocaine between the center console and the passenger's seat in the front of the car. Sometime after the green Jeep was searched, the dog was taken around the white car and alerted at the front bumper, where Heard had opened his hand while walking around the car. Crack cocaine was also found at that location.
 {¶ 7} On September 6, 2001, Heard was indicted on one count of possession of crack cocaine in an amount exceeding five grams but less than ten grams in violation of R.C. 2925.11(A). He filed a motion to suppress on October 26, 2001. A hearing was held on December 5, 2001, at which Officers Howard, Swisher, and Lally testified for the state and Lannigan and Heard testified for the defense. The trial court overruled Heard's motion to suppress on March 4, 2002. On March 27, 2002, Heard entered a plea of no contest and was found guilty. He was sentenced on May 13, 2002 to one year of imprisonment, to be served concurrently with his sentence in a separate case. The court also suspended his license for a period of three years.
 {¶ 8} Heard appeals, raising one assignment of error.
 {¶ 9} "The trial court erred when it held that the investigatory stop was constitutionally permissible."
 {¶ 10} Under this assignment of error, Heard argues that the police did not have reasonable suspicion to detain him while a drug sniffing dog was brought to the scene.
 {¶ 11} Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress: "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586,592, 639 N.E.2d 498.
 {¶ 12} Heard does not argue that the police behaved improperly in their initial stop and questioning of him or the occupants of the white Oldsmobile. Rather, he argues that, when they found no evidence of drugs after that initial period, they lacked reasonable suspicion to detain him while a drug sniffing dog was called to the scene.
 {¶ 13} We note that the police are not required to have reasonable suspicion that a car contains drugs prior to subjecting a lawfully detained vehicle to a canine sniff. See State v. Rusnak (1997),120 Ohio App.3d 24, 28, 696 N.E.2d 633. This is because a canine sniff is not a search within the meaning of the Fourth Amendment. See id.; Statev. French (1995), 104 Ohio App.3d 740, 749, 663 N.E.2d 367; United Statesv. Place (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45. However, police must have reasonable suspicion that a vehicle contains drugs in order to detain a suspect while a drug sniffing dog is brought to the scene. See State v. Kerns (Mar. 16, 2001), Montgomery App. No. 18439. "Reasonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones (1990),70 Ohio App.3d 554, 556-557, 591 N.E.2d 810, 811, citing Terry v. Ohio
(1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 1883.
 {¶ 14} In determining the existence of reasonable suspicion, we evaluate the "totality of the circumstances." State v. Shepherd (1997),122 Ohio App.3d 358, 365, 701 N.E.2d 778, citing State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489. These circumstances must be considered "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. White, Montgomery App. No. 18731, 2002-Ohio-262, quoting State v. Andrews
(1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271.
 {¶ 15} In the case sub judice, a number of factors are relevant to our determination of whether the officers had reasonable suspicion sufficient to detain Heard while a drug sniffing dog was brought to the scene. First, the police were dispatched to Dietzen Street based upon a call from an informant who gave his name and address. Heard appears to concede that the informant would be categorized as an "identified citizen informant." See Maumee v. Weisner (1999), 87 Ohio St.3d 295, 300,1999-Ohio-68, 720 N.E.2d 507 (categorizing informants into three classes — the anonymous informant, the known informant from the criminal world who has given reliable information to police in the past, and the identified citizen informant). Identified citizen informants are presumed to be highly reliable, and information from such an informant can provide reasonable suspicion on its own. See id.; State v. Carstensen (Dec. 18, 1991), Miami App. No. 91-CA-13. The citizen informant in this case told police that a white car and a green car were meeting on Dietzen Street for a drug transaction. Upon arrival, Officers Howard and Swisher observed a green Jeep parked behind a white Oldsmobile in front of 1260 Dietzen Street.
 {¶ 16} In addition to the tip from the citizen informant, numerous other factors contributed to the officers' reasonable suspicion that Heard's vehicle contained drugs. The encounter occurred at 9:00 p.m. in the evening in an area known for high drug activity. Officer Howard testified that he had made approximately 20 arrests for drugs in the area, and Officer Swisher testified that he had made approximately 100 arrests in that area. Further, from their location behind the Jeep, the officers observed Heard stand up from the window of the white Oldsmobile when he saw them and walk to the front bumper of the car with his hand clenched before opening his hand in front of the car. He then walked back to the Jeep and leaned his head and arms into the passenger window, past the passenger. Based upon their experience, each testified that such furtive behavior was typical of people engaged in drug transactions. Finally, upon questioning Heard and the occupants of the Oldsmobile, the officers noted that their explanations conflicted. The occupants of the Oldsmobile stated that they were waiting for someone to discuss buying a car. While Lannigan testified at the hearing on the motion to suppress that he had been discussing buying a car with Heard, it does not appear that he told Officer Howard that Heard was the person from whom he was to be buying a car. Rather, he did not identify to Officer Howard for whom he was waiting. When questioned by Officer Swisher, Heard said nothing about discussing the sale of a car with Lannigan. He stated that he was walking to his father's house.
 {¶ 17} Based upon the totality of the circumstances, including the informant's call, the officers' observations on the scene, and the conflicting stories given by Heard and Lannigan, the officers had reasonable suspicion that Heard's vehicle contained drugs. Therefore, they were permitted to detain Heard while a drug sniffing dog was brought to the scene. The detention itself was within the bounds of reasonableness under the Fourth Amendment. The canine unit arrived with five minutes after the officers called it. When the dog alerted on Heard's vehicle, the officers had probable cause to search it for contraband. French, supra.
 {¶ 18} Accordingly, we conclude that the trial court did not err in overruling Heard's motion to suppress.
 {¶ 19} The sole assignment of error is overruled.
 {¶ 20} The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.